UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| VICTOR L. DURDEN | CIVIL ACTION NO. 06-cv-0277 |
| VERSUS | JUDGE STAGG |
| WARDEN LOUISIANA STATE PENITENTIARY | MAGISTRATE JUDGE HORNSBY |

**REPORT AND RECOMMENDATION**

**Introduction**

A Caddo Parish jury convicted Victor Durden ("Petitioner") of armed robbery. Petitioner was sentenced as a second-felony offender to 49-1/2 years in prison. Petitioner pursued several issues on direct appeal and in a state post-conviction application. He now seeks federal habeas corpus relief.

**Sufficiency of the Evidence**

Petitioner argues that the evidence was not sufficient to support his conviction. In evaluating the sufficiency of evidence to support a conviction "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 99 S.Ct. 2781, 2789 (1979). The trier of fact has broad discretion to "resolve conflicts in testimony, to weigh evidence, and to draw reasonable inferences from basic facts to ultimate facts." Id. The Jackson inquiry "does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether

it made a rational decision to convict or acquit." Herrera v. Collins, 113 S.Ct. 853, 861 (1993).

Witnesses testified that four men dressed in dark clothing and masks robbed the Greenwood Road branch of the Hibernia Bank in Shreveport. At least two of the men were armed with handguns, and they threatened the lives of the employees and customers in the bank.

Customer Brad Folker encountered the men as they entered the bank, and he ran to a fire truck that was stopped at a nearby traffic light and asked the firemen to call 911. He also directed the firemen to a car in the parking lot of the bank that he believed the robbers might be using. The fire truck was "pretty much blocking" the entrance to the bank, and one of the firemen began to try to get a look at the license plate on the car, at which time the driver in the car ran over the curb and hit the back of the fire truck as he sped away from the bank.

Mr. Folker testified that he saw the four robbers run out of the bank a few minutes later and see that their getaway car had gone. Folker said that the robbers were "in turmoil trying to figure out what to do." Tr. 320-24. Several witnesses who were inside the bank offered testimony to support these facts.

Ashley Bullock was in the drive-through facility at the back of the bank at the time of the robbery. She could not see the teller area from where she worked, but she did witness the robbery on a television monitor. She immediately called 911 and yelled that there were

men in the bank with guns, but the operator put her on hold, and she did not get through to the police. She soon saw several men with masks running down the side of the bank, with one carrying a bag. The men tried to get in a car with a woman who was in the drive-through lane, and a dye pack placed inside the money bag exploded at about that time. The red colored dye exploded from the bag. The man who was holding the bag dropped it, and all of the robbers fled. Tr. 353-56.

Roy Don Watts was working as a security guard at the nearby Willis-Knighton Hospital when he saw police cars arriving at the scene and began monitoring his security radio. Another area security guard stationed on the fourth floor of a building started yelling that one of the people from the bank was running across the parking lot at the rear of the building. Mr. Watts spotted the man coming toward him. In court, Watts identified Petitioner as the man he saw running.

Mr. Watts testified that Petitioner was wearing a white T-shirt or muscle shirt and dark trousers. A police car with flashing lights approached the area, and Petitioner stopped at a door to a building and acted as if he were going inside, but Petitioner turned as if to continue running after the police car passed. Mr. Watts then made eye contact with Petitioner and ordered him to lie down on the ground, which Petitioner did. A deputy came and handcuffed Petitioner. Tr. 395-99.

Police searched the area and recovered stolen money, but they did not find any guns. Tr. 429. They also recovered items such as stocking caps, bandana scarfs, black sweat pants,

a large black T-shirt, a hooded black jacket, and other items of clothing and gloves. Tr. 408-29.

Corporal Danny Duddy testified that some latent shoe impressions were taken from a counter-top inside the bank. An attempt was made to lift fingerprints, but none were found; witnesses said the robbers wore gloves. Duddy also photographed Petitioner in his white shirt, which Duddy testified had a "reddish-colored stain to it." Photographs were admitted that depicted the stain as light. Tr. 430-33.

Randall Robillard of the Crime Lab described the chemical test he used to attempt to match dye stains to the dye that came from a pack placed by a bank teller. He said that he had worked six or seven such cases, and the amount of dye for testing "must be pretty significant in order for our instrument to be able to detect it." He was able to see a red material on the T-shirt Petitioner was wearing at the time of arrest, but there was not enough material to identify it through the chemical testing process. Accordingly, Mr. Robillard could not say that the red stain on Petitioner's T-shirt was the same as the material from the dye pack. Tr. 439-49.

Petitioner told police that his name was Derrick Porter, and he gave a tape recorded statement. The trial judge held a "free and voluntary" hearing to determine whether the statement would be admitted to the jury. Detective Anthony Rei testified that the tape recording was an accurate reflection of the interview, but there was a mishap or mistake during the recording that caused it to be sped up. Rei testified that the entire interview could

nonetheless be understood, and the tape was played for the trial judge. Rei testified that the police did not attempt to have the tape transcribed. The trial judge found that the statement was made voluntarily after the suspect was advised of his rights. Only a small portion of the 40-minute interview, near the end, could not be understood by the court, and the court ruled that the tape was admissible. Some references to an earlier robbery, gang affiliation, and a request for an attorney (after the interview) were excluded by agreement. Tr. 292-304.

Detective Rei testified at trial that Petitioner first stated that he was Derrick Porter and was a homeless person who lived on the streets of Shreveport. Rei testified that Petitioner admitted to him "that he entered the bank with the intent to commit a robbery." Rei said that Petitioner denied being armed, but he did have a plastic bag with him to hold the money. He denied knowing any of the other robbers (none of which were apprehended). Thus, Petitioner claimed that he went to the bank (alone and unarmed) to rob it, but armed robbers just happened to show up at the same time. He denied any involvement with the armed men. Detective Rei, after summarizing the interview, testified that it had been recorded, and the agreed portion of the tape was played for the jury (but not transcribed by the court reporter). Finally, Detective Rei testified that the officers learned through a fingerprint identification system that Petitioner was not Derrick Porter but was Victor Durden and had an address in California. Tr. 460-67.

Petitioner argued on direct appeal that this evidence was insufficient to support his conviction for armed robbery. The state appellate court noted that the prosecution may prove

guilt by showing that a person served as a principal to a crime, so that the defendant need not personally hold a weapon to be guilty of armed robbery. If he aids or abets another in the crime, he is liable just as the person who held the weapon. The defendant's intent to commit the crime is a question of fact, and it may be inferred from the circumstances, including flight in an attempt to avoid apprehension. State v. Durden, 842 So.2d 1244, 1248-49 (La. App. 2d Cir. 2003), writ denied, 860 So. 2d 1131 (La. 2003).

The state court reviewed the evidence discussed above, stated the elements of the crime, and assessed the evidence under the relevant Jackson standard. It noted that the witnesses did not contradict one another, and their testimony was not contradicted by any of the physical evidence. Petitioner was spotted running in the vicinity of the bank, his shirt had a red stain that appeared to be consistent with the dye pack, Petitioner lied about his identity, and Petitioner admitted that he was inside the bank and intended to rob it (but without a weapon). The state court determined that the evidence did not hint that one of the robbers was acting alone when the evidence was viewed in a light most favorable to the prosecution, and proved beyond a reasonable doubt that Petitioner was part of the group of armed robbers who stormed the bank together, took money, and fled together. State v. Durden, 842 So. 2d at 1247-49.

The Louisiana appellate court invoked, recited and applied the Jackson standard on Petitioner's direct appeal, so its decision was not "contrary to clearly established Federal law," and Petitioner can obtain habeas relief only if the state court's decision was an

"unreasonable application" of Jackson. 28 U.S.C. § 2254(d); Williams v. Taylor, 120 S.Ct. 1495, 1523 (2000); Santellan v. Cockrell, 271 F.3d 190, 193 (5th Cir. 2001).

Under the unreasonable application clause, a federal court is permitted to grant the writ if the state court has identified the correct governing legal principle from the Supreme Court's decisions but unreasonably applied that principle to the facts of the prisoner's case. Williams, 120 S.Ct. at 1523. Even if the federal court, in its independent judgment, has a firm conviction that the state court was incorrect in its application of a federal constitutional principle, that alone does not permit the federal court to grant habeas relief. Relief is not permitted unless the state court decision was so wrong as to be objectively unreasonable. Lockyer v. Andrade, 123 S.Ct. 1166, 1175 (2003). And it is only the state court's ultimate decision, not the quality of its analysis or opinion, that is at issue. Neal v. Puckett, 286 F.3d 230, 246 (5th Cir. 2002)(en banc).

The state court's decision regarding the sufficiency of the evidence was quite reasonable. All of the evidence pointed to Petitioner being a part of the group of men that entered and, armed with weapons, robbed the bank, and left together. There was no testimony to suggest that any one robber seemed surprised to find himself in the midst of an armed robbery or otherwise acted in a fashion that would support Petitioner's unlikely claim. Habeas relief is not warranted with respect to this claim.

**Ineffective Assistance; Opening Statement**

After the prosecution delivered an opening statement that included a description of Petitioner's outlandish claim and otherwise detailed the evidence of guilt, defense counsel gave an opening statement. He stated:

> Good morning, ladies and gentlemen. It's our position in this case that -- excuse me -- Victor Durden is not guilty of armed robbery but *a lesser offense.* (emphasis added). And there's some facts in this case that are not in dispute. And they are, one, that the bank was robbed; two, that the men that were robbing the bank wore masks, so you will not hear persons point to Victor Durden or see that until you get to the point; number three, which is also a fact not in dispute, that Victor was arrested running from the scene.

Defense counsel also pointed out that no money was recovered from Petitioner and generally urged the jury to carefully scrutinize the evidence and not decide the case until all facts were in. Tr. 319-20.

Petitioner urged in a post-conviction application that defense counsel was ineffective because he conceded guilt to a lesser degree of crime, abandoning his duty of loyalty to his client and relieving the prosecution of its burden of proof. The trial court rejected the claim, noting that if counsel had attempted to claim complete innocence, counsel and Petitioner would have suffered a "great loss of credibility with the jury" given Petitioner's statement to police that he entered the bank with the intent to rob it. Tr. 951. The state appellate court agreed that the opening statement "was obviously a strategic move to keep this applicant from being convicted of armed robbery." The court added that it was "perhaps unwise not

to inform this applicant of the opening statement, [but] it is not error since the trial attorney was taking steps to bolster credibility of the applicant's statement." Tr. 986-87. The Supreme Court of Louisiana denied writs without comment. Tr. 1046.

Petitioner argues that he was essentially deprived of counsel so that prejudice is presumed under U.S. v. Cronic, 104 S.Ct. 2039 (1984), but the law is now settled that a defense counsel's concession of guilt to a lesser offense is analyzed under Strickland v. Washington, 104 S.Ct. 2052 (1984), which requires a showing of prejudice to obtain relief. Haynes v. Cain, 298 F.3d 375 (5th Cir. 2002) (en banc) (counsel conceded guilt of second degree murder in a capital case; habeas relief denied because strong evidence of guilt prevented a finding of prejudice).[1] Thus, this claim is subject to the familiar, two-pronged performance and prejudice standard of Strickland.

Petitioner states that the concession of guilt in Haynes was probably a wise move, but he argues that his case is different because there was not the overwhelming evidence against him that was presented in Haynes. Petitioner underappreciates the weight of evidence against him, and he misstates the evidence that was presented at trial. For example, he claims that his statement to police, "was never admitted into evidence, nor was it played during trial." Petition, pp. 10-11. The record plainly reflects, however, that the tape was played for

---

[1] Haynes relied on Bell v. Cone, 122 S.Ct. 1843 (2002), which clarified the limited context in which Cronic applies.

the jury, and the tape (Exhibit S-36) was admitted into evidence. Tr. 464-65. Also, Detective Rei, who witnessed the statement, testified about what Petitioner said.

Petitioner also overstates the concession made by counsel. Petitioner suggests that counsel conceded guilt to a lesser included offense to the armed robbery charge, but counsel only stated that it was his position that Petitioner was guilty of "a lesser offense." He never identified any particular crime to which evidence of guilt was conceded, and it is clear from the context of the statement that counsel was merely conceding that Petitioner had been involved in wrongdoing when he (admittedly) entered the bank with a money bag with the intent to rob the bank. The prosecution gained nothing from this concession that it could not already prove with Petitioner's own words.

Prejudice exists only if there is a reasonable probability that, but for the error, the result of the trial would have been different. A reasonable probability is one sufficient to undermine confidence in the outcome. Strickland, 104 S.Ct. at 2068. The state court determined that prejudice was not shown. This federal court's review of that decision is not based on whether Petitioner made the showing required by Strickland. Rather, the standard is whether the state court's decision was contrary to, or an unreasonable application of, the standards provided by Strickland's clearly established federal law. Williams v. Taylor, 120 S.Ct. 1495 (2000); Henderson v. Quarterman, 460 F.3d 654, 665 (5th Cir. 2006). The state court decision was, for the reasons outlined above, a principled and reasonable application of Strickland to the facts in this case. Habeas relief is not merited on this claim.

Petitioner also urges that his counsel was ineffective for not informing him of the decision to admit to the jury that Petitioner was guilty of a lesser offense. The state appellate court noted that it was "perhaps unwise" not to inform Petitioner of the strategy beforehand, but it was not error. Assuming error, Petitioner has not articulated any way that he was prejudiced by the omission.

**Ineffective Assistance; Beverly Stewart**

Police interviewed Beverly Stewart, a customer of the bank who was completing a deposit slip when the robbery began. She reported that three of the four or five suspects jumped the teller counters. One of the men who did not jump the counter ordered Stewart to the floor. Stewart said all of the suspects, except one, had on military style boots. The other man was one of those who jumped the counter, and he was wearing "tennis shoes that were white with black and another color on them." Tr. 941-42. Petitioner states in his brief that he "asserts that when he was arrested he had on powder blue tennis shoes with a blue Nike swoosh symbol on both sides of the shoes, jeans, and a white tank top." Petition, p. 13.

Petitioner's clothing items were presented collectively as State's Exhibit S-34. A police officer described the exhibit "a pair of shoes, a light tank top, and a blue pair of pants." Tr. 433-34. Later in the trial, the State actually introduced S-34. Tr. 449. None of the testimony surrounding the admission of the clothing items describes the color of the shoes. The exhibit list describes S-34 as clothing, without elaboration. Tr. 939. Neither

Petitioner nor the State has pointed to testimony or evidence in the record regarding the color of the shoes, so we have only Petitioner's assertion in his brief that they were blue.

Petitioner contends that because of the alleged discrepancy between the color of his shoes and the shoes described by Ms. Stewart, his counsel was ineffective for failing to interview and subpoena Ms. Stewart as a trial witness. The trial judge rejected the claim, noting that Petitioner admitted to police that he was present at the bank at the relevant time, and there were statements from witnesses that Petitioner was changing clothes as he fled the scene. Thus, even if it were assumed that counsel's failure to subpoena Ms. Stewart was deficient performance, there was no prejudice. Tr. 952-53. A state appellate court wrote:

> Failing to interview and subpoena a person who said one of the robbers wore white tennis shoes would not have had any impact on the outcome of this trial. The applicant's confession placed him inside the bank during the robbery. Tr. 986-87.

Petitioner bears the burden of showing that the state court's decision was an objectively unreasonable application of <u>Strickland</u> to the facts. Petitioner has, first, not pointed to facts in the record that would support his contention regarding the discrepancy in shoe colors. Assuming such a discrepancy, the state court was quite reasonable in finding no prejudice on this issue due to Petitioner's admission that he was in the bank at the relevant time.

**Multiple Offender Status**

The State sought to enhance the armed robbery sentence on the grounds that Petitioner was a third-felony offender. The trial court granted a motion to quash and excluded consideration of a 1996 California conviction because there was no evidence that Petitioner

was represented by counsel in that case. The court refused to quash consideration of a 1998 California conviction. Tr. 519. Petitioner was then sentenced as a second-felony offender.

Petitioner argued on direct appeal that the use of the 1998 California conviction to enhance his sentence ran afoul of Boykin because the district attorney, not the judge, conducted the plea colloquy and explained Petitioner's rights. The state appellate court noted that Petitioner raised this issue for the first time on appeal, but the court nonetheless addressed the merits. The court found that the California judge made an independent inquiry as to whether Petitioner understood the rights the district attorney explained, and it found that Petitioner had adequate information to enter an intelligent and voluntary plea valid under Boykin. State v. Durden, 842 So.2d at 1249-51.

Petitioner now seeks federal habeas relief on the same grounds rejected by the state court. Petitioner's argument is foreclosed by Lackawanna County District Attorney v. Coss, 121 S.Ct. 1567 (2001). That decision holds that habeas relief is unavailable to a state prisoner when the prisoner challenges a current sentence on the ground that it was enhanced based on an allegedly unconstitutional prior conviction for which the prisoner is no longer in custody. There is an exception if counsel was not appointed in connection with a prior conviction, but the records in this case show that Petitioner was afforded counsel when he pleaded guilty to the prior felony. Petitioner was represented at his guilty plea by Robert Dager, a deputy public defender. Tr. 235-46. No habeas relief is available on this claim. This resolves Petitioner's final claim for habeas relief.

Accordingly;

**IT IS RECOMMENDED** that Petitioner's petition for writ of habeas corpus be **denied**, and that Petitioner's complaint be **dismissed with prejudice**.

### Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within ten (10) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 10 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 22nd day of January, 2009.

_____
MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE